IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Robbie G. Stroman,<br>*on behalf of D.D.S., a minor child*,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner<br>of Social Security,[1]<br><br>　　　　　　Defendant.<br>_____ | C/A No. 0:13-2496-TMC-PJG<br><br><br><br><br>**REPORT AND RECOMMENDATION** |

　　This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Robbie G. Stroman, brought this action on behalf of her minor child pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her minor child's claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**SOCIAL SECURITY DISABILITY FOR MINORS**

　　An individual under the age of eighteen is considered disabled under the Social Security Act if that child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



§ 1382c(a)(3)(C)(i); see also 20 C.F.R. § 416.906. To determine whether a child is disabled, the regulations require the ALJ to consider, in sequence:

(1) whether the child is engaged in substantial gainful activity;

(2) whether the child has a "severe" impairment; and

(3) whether the child has an impairment that meets, medically equals, or functionally equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled.

20 C.F.R. § 416.924(b)-(d).

To assess functional equivalence, the Commissioner will consider the child's level of function in six domains, which "are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). These domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. Id. A child's impairments or combination of impairments functionally equal the listings when they result either in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). Generally, the Commissioner will find that a child has a "marked" limitation in a domain when the child's impairment or combination of impairments interferes seriously with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). " 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme,' " and may arise when several activities are limited, or when only one is limited. 20 C.F.R. § 416.926a(e)(2)(i). Generally, the Commissioner will find that the child has an "extreme" limitation in a domain when the claimant's impairment or combination of impairments interferes very seriously with his ability to independently initiate, sustain, or complete activities. 20 C.F.R.

§ 416.926a(e)(3)(i). " 'Extreme' limitation also means a limitation that is 'more than marked,' " and may arise when several activities are limited or when one is limited. Id. Although "extreme" limitation is the rating given to the worst limitations, it does not necessarily mean a total lack or loss of ability to function. Id.

### ADMINISTRATIVE PROCEEDINGS

In July 2010, Stroman applied for SSI on behalf of her minor son, D.D.S. Stroman's application was denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on May 17, 2012 at which D.D.S., as well as Stroman, appeared and Stroman testified. Stroman was represented at the hearing by Ashley Thompson, Esquire. The ALJ issued a decision on June 7, 2012 finding that the minor child was not disabled. (Tr. 13-25.)

D.D.S. was born in 1999 and was eleven years old on July 16, 2010, the date the SSI application was filed on his behalf. (Tr. 103.) Stroman alleges that D.D.S. became disabled October 30, 2005 due to a learning disability, attention deficit hyperactivity disorder, and speech problems.

In applying the three-step sequential process, the ALJ found that D.D.S. had not engaged in substantial gainful activity since July 16, 2010—the application date. The ALJ also determined that D.D.S.'s learning disability and attention deficit hyperactivity disorder were severe impairments. However, the ALJ found that D.D.S. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"), or that functionally equaled the severity of the listings. Therefore, the ALJ found that D.D.S. was not disabled since July 16, 2014, the date the application was filed.



Stroman appealed, and the Appeals Council denied her request for review on August 20, 2013 making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

### ISSUES

Stroman raises the following issues for this judicial review:

I.      The ALJ failed to consider Plaintiff's oppositional defiance disorder and poor impulse control as severe impairments[.]

II.       The ALJ failed to properly explain why Plaintiff did not have marked limitation in attending and completing tasks or in interacting and relating with others[.]

(Pl.'s Br., ECF No. 17.)

## DISCUSSION

**A.    Severe Impairments**

Step Two of the sequential evaluation requires the ALJ to consider the medical severity of a claimant's impairment(s). 20 C.F.R. § 416.924(c). If the claimant's "impairment(s) is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," then it is not severe. 20 C.F.R. § 416.924(c).

At Step Two, the ALJ found that the claimant's learning disability and attention deficit hyperactivity disorder constituted severe impairments. The ALJ also considered the claimant's asthma and found it to be non-severe. Stroman argues that the ALJ erred in failing to consider whether the claimant's oppositional defiant disorder and intermittent explosive disorder/poor impulse control were severe impairments. In support of this position, Stroman points to medical evidence demonstrating that the claimant has been diagnosed with oppositional defiant disorder and explosive disorder. (See, e.g., 296, 298, 299.) Stroman also relies on a medical record from August 2011 that she argues indicates that the claimant "used violence, profanity and aggression to get his way at home" and "had significant difficulty managing his behavior at school and around his older brother," as well as noting that the claimant "had significant difficulty managing his behavior at school and is at high risk for expulsion." (Pl.'s Br. at 14, ECF No. 17 at 14) (citing Tr. 304.) Stroman points to a counselor's note also from August 2011 that states that the claimant needed anger management, "self-mediation," and to decrease impulsive aggressive outbursts and argues that



later notes indicate that claimant continued to have difficulty at home with his brother. (Id. at 14-15) (citing Tr. 295, 299). Stroman also points to a questionnaire completed by the claimant's special education teacher in September 2010, indicating that the claimant had an "obvious problem"[2] in following rules and respecting/obeying adults in authority; that the claimant was sent to the expectations coach for not following directions and talking to the teacher in a disrespectful manner; and that the claimant follows others when they are not following the classroom rules and he becomes mad when he is confronted with his actions. (Tr. 140.) At the time this questionnaire was completed, the claimant had known the teacher for almost one month. Finally, Stroman argues that she testified at the hearing that the claimant's behavior was not good, that he had a bad attitude and outbursts when he was upset, and that she had received a call from the school about his behavior. Stroman indicated that the claimant had received in-school suspension on one occasion. (Tr. 52-53.)

As an initial matter, Stroman appears to be arguing for the first time that these impairments constitute severe impairments. (Cf. Tr. 157-58 (pre-hearing brief identifying borderline intellectual functioning, speech/language impairment, and attention deficit hyperactivity disorder as severe impairments); Tr. 195-97 (letter to the Appeals Council similarly identifying borderline intellectual functioning, speech/language impairment, and attention deficit hyperactivity disorder as severe impairments)); see, e.g., Dubois v. Astrue, C/A No. 11-cv-263-JL, 2012 WL 2357258, at *5 n.4 (D.N.H. June 20, 2012) (" 'When a claimant is represented, the ALJ should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored.' ") (quoting Faria v. Comm'r of Soc. Sec., 187 F.3d 621 (1st Cir.

---

[2] The court observes that the options on the questionnaire were no problem, a slight problem, an obvious problem, a serious problem, or a very serious problem. (Tr. 140.)



1998) (Table)). Moreover, the evidence that Stroman argues supports a determination that the claimant's oppositional defiant disorder and explosive disorder were severe impairments was clearly considered and evaluated by the ALJ at Step Three of the sequential process. Stroman appears to argue that these impairments limited the claimant's ability to interact and relate with others; however, as discussed in greater detail below, Stroman has failed to demonstrate that the ALJ's findings in this area were unsupported by substantial evidence or controlled by an error of law. The court finds that even if the ALJ erred in failing to evaluate these impairments at Step Two, Stroman cannot establish any harm from this error. See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); Washington v. Astrue, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) ((adopting Report and Recommendation that included a collection of cases and finding "no reversible error where the ALJ does not find an impairment severe at step two provided that he or she considers that impairment in subsequent steps").

**B.     Functional Equivalence**

As stated above, at Step Three a claimant is disabled if his impairment(s) functionally equals a Listing. To assess functional equivalence, the Commissioner will consider the child's level of function in six domains, which "are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Stroman challenges the ALJ's findings with regard to two of these domains: (1) attending and completing tasks and (2) interacting and relating with others. See 20 C.F.R. § 416.926a(b).

1.      **Attending and Completing Tasks**

The ALJ explained that "[t]his domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities." (Tr. 20.) The ALJ also observed that this domain "refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time." (Id.) The ALJ noted the following examples of actions illustrating limitations in this domain: being easily startled, distracted, or over-reactive to everyday sounds, sights, movements, or touch; being slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); repeatedly becoming side-tracked from activities or frequently interrupting others; being easily frustrated and giving up on tasks, including ones he is capable of completing; requiring extra supervision to remain engaged in an activity; or being unable to plan, manage time, or organize self in order to complete assignments or chores.

In this case, the ALJ found that the claimant had less than marked limitations in attending and completing tasks. Specifically, the ALJ observed that "[t]he evidence shows that the claimant is easily distracted according to his teacher (Exhibit 4E) and test results (Exhibit 3F). He has difficulty asking and answering questions due to his speech disorder (Exhibit 5F). However, recent mental health treatment notes show improvement in school." (Tr. 21.) Earlier in the decision, the ALJ observed that the claimant's most recent treatment notes from the mental health center indicated that the claimant was improving; his school performance was improving and he was doing well in school with good task completion. (Tr. 18.) The ALJ also discussed the September 2010 teacher questionnaire, stating that it reflected the following in this domain:



> [T]he claimant has a very serious problem in working without distracting self or others. The claimant has an obvious problem carrying out multi-step instructions and changing from one activity to another without being disruptive. He has a slight problem in refocusing to task when necessary and completing work accurately without careless mistakes. He has no problem in paying attention when spoken to directly, sustaining attention during play/sports activities, focusing long enough to finish assigned activity or task, carrying out single step instructions, waiting to take turns, organizing own things or school materials, completing class/homework assignments, and working at a reasonable pace/finishing on time.

(Id.)

Stroman argues that the ALJ's finding in this domain is inconsistent. Specifically, she argues that the ALJ's reliance on a record indicating improvement in school is insufficient in light of the other evidence and that the ALJ's previous observation that there was a discrepancy in the evidence as to the claimant's current grades contradicts the evidence of improvement. Stroman also argues that the ALJ failed to explain adequately why he found that the claimant had less than marked limitations in attending and completing tasks, but marked limitations in acquiring and using information.[3] Finally, Stroman reiterates some of the more limited findings on the September 2010 teacher questionnaire.[4]

Upon review of the record and the ALJ's decision, the court concludes that Stroman has failed to demonstrate that the ALJ's findings were unsupported by substantial evidence. While Stroman points to selective pieces of evidence that she contends support additional limitations, the

---

[3] The ALJ explained that the "acquiring and using information" domain "involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, at school, and in the community." (Tr. 19.)

[4] The court observes that contrary to Stroman's representations, the claimant's teacher did not indicate that the claimant had a very serious problem in carrying out multi-step instructions and changing from one activity to another without being disruptive; rather, she indicated that he only had an obvious problem in those areas. (See Tr. 139.)



court finds that the ALJ's decision is comfortably within the bounds of substantial evidence. For example, the ALJ clearly considered all of the findings in the September 2010 completed teacher questionnaire, including the three limited activities Stroman relies on as well as the eight activities in which the teacher indicated the claimant had no limitations. Further, while the claimant's grades maybe a significant source of information about limitations in the acquiring and using information domain, see SSR 09-3p, 2009 WL 396025, the domain at issue here is attending and completing tasks which does not specifically indicate any significance with regard to grades. See SSR 09-4p, 2009 WL 396033. Further, the state agency examiners opined that the claimant had less than marked limitations in attending and completing tasks, unlike the domain of acquiring and using information in which they opined the claimant had marked limitations. (See Tr. 282, 288.) Accordingly, Stroman has failed to demonstrate that the ALJ's decision is unsupported by substantial evidence or controlled by an error of law. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

### 2. Interacting and Relating with Others

The ALJ explained that "[t]his domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the



possessions of others." (Tr. 21.) The ALJ also observed that "[i]nteracting and relating with others relates to all aspects of social interaction at home, at school, and in the community. Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community." (Id.) The ALJ noted the following examples of actions illustrating limitations in this domain: not reaching out to be picked up and held by caregiver; having no close friends, or all friends are older or younger than the child; avoiding or withdrawing from people he knows, or being overly anxious or fearful of meeting new people or trying new experiences; having difficulty playing games or sports with rules; having difficulty communicating with others (e.g., in using verbal and nonverbal skills to express himself, in carrying on a conversation, or in asking others for assistance); or having difficulty speaking intelligibly or with adequate fluency. (Tr. 22.)

The ALJ found that the claimant had no limitation in this domain. In support of this finding, the ALJ observed that "[t]he claimant has no social problems in relating to others as the record and testimony show that, other than some sibling disagreements, he is well-behaved at school and at home; and his mother testified and told the mental health center he is a big help at home." (Id.) Further, earlier in the decision, the ALJ observed that the September 2010 teacher questionnaire reflected the following regarding this domain:

> [T]he claimant has an obvious problem in following rules and respecting/obeying adults in authority. He has a slight problem in seeking attention appropriately; expressing anger; taking turns in a conversation; and interpreting meaning of facial expression, body language, hints, and sarcasm. He has no problem in playing cooperatively with other children, making and keeping friends, asking permission appropriately, relating experiences and telling stories, using language appropriate to the situation and listener, introducing and maintain relevant and appropriate topics of conversation, and using adequate vocabulary and grammar. The claimant's teacher also indicates that the claimant has no problem with moving about and



manipulating objects.  The claimant's teacher further indicates that the claimant has only slight problems with caring for himself and health and physical well-being.

(Tr. 18-19.)

Stroman argues that the ALJ's finding in interacting and relating with others is unsupported because the ALJ failed to note that the claimant was diagnosed with oppositional defiant disorder and explosive disorder/poor impulse control. Additionally, Stroman argues that the ALJ did not note that (1) behavior modification strategies were implemented for the claimant and (2) his teacher indicated that the claimant followed others when they were not following the classroom rules and that he became mad when confronted with his action.

Upon review of the record and the ALJ's decision, the court concludes that Stroman has similarly failed to demonstrate that these findings by the ALJ were unsupported by substantial evidence.  While Stroman again points to selective pieces of evidence that she contends support additional limitations, the record as a whole, including Stroman's testimony, the medical and school records, and the teacher questionnaire, provides substantial evidence for the ALJ's finding.  For example, although Stroman testified that the claimant's behavior was not good and that he had a bad attitude and outbursts when he was upset, she also testified that the claimant was helpful, did not argue with her, and had friends in the neighborhood.  (See Tr. 52-53, 57-61.)  Further, the claimant's school records indicate good social skills and manners and that behavior was not a concern.  (See Tr. 163, 172, 189, & 237.)  Moreover, even if the court were to determine that the ALJ failed to adequately explain his finding that the claimant had *no* limitations in this domain as opposed to less than marked, the court finds any error harmless.  As stated above, for a child's impairments to

functionally equal the Listings, they must result in either "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

## RECOMMENDATION

For the foregoing reasons, the court finds that Stroman has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 10, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).